UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KAREN L. STEUERWALD,                          )
                                              )
                    Plaintiff,                )
                                              )
             v.                               )        Case No. 1:15-cv-00273-TWP-DML
                                              )
CAROLYN COLVIN, Acting Commissioner           )
of the Social Security Administration,        )
                                              )
                    Defendant.                )

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Karen L. Steuerwald ("Ms. Steuerwald") requests judicial review of the final

decision of the Defendant, Carolyn Colvin, Acting Commissioner of the Social Security

Administration ("Commissioner"), wherein the Commissioner denied her application for Social

Security Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act. *See*

42 U.S.C. §§ 416(i), 423(d) (2012).  For the reasons stated below, the Court **AFFIRMS** the

Commissioner's final decision.

## I.  BACKGROUND

**A.**     **Procedural History**

On December 30, 2011, Ms. Steuerwald applied for DIB, alleging a disability onset date

of December 13, 2011.  Her claim was denied initially on April 26, 2012, and upon reconsideration

on July 17, 2012.  Thereafter, on August 15, 2012, Ms. Steuerwald requested a hearing.  On

November 13, 2013, a hearing was held before Administrative Law Judge John H. Metz ("the

ALJ").  On December 3, 2013, the ALJ issued a decision that Ms. Steuerwald was not disabled.

The Appeals Council denied Ms. Steuerwald's request for review of the ALJ's decision, thereby

rendering it the Social Security Administration's final decision.  On February 19, 2015, Ms.

Steuerwald filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.**   **Relevant Background and Medical History**

Ms. Steuerwald was forty-five years old on her alleged onset date of disability and she was forty-seven years old at the time of her hearing. She is married and has no children under the age of eighteen. Ms. Steuerwald completed one year of college and her past relevant work history includes data examination clerk, recreational leader, and truck driver. She has the following severe impairments: atypical sleep apnea, hypertension, lymphedema, hyperthyroidism, neuropathy of the lower extremities, and obesity.

Since November 2006, Ms. Steuerwald has been a patient of Dr. William Adair ("Dr. Adair"). She reported a history of lymphedema, a collection of fluid in the limbs, as early as 2007. During a doctor visit on December 19, 2011, Ms. Steuerwald had her right toe drained due to lymphedema. Thereafter, Dr. Adair referred her to physical therapy to treat the lymphedema in her legs. In January 2012, Ms. Steuerwald reported that her lymphedema was mostly in her lower extremities, but since she began wrapping her legs, it had traveled to her upper extremities. Upon examination, Ms. Steuerwald had +1 (a barely detectable impression when finger pressed into the skin) pitting edema in her legs. In January and February 2012, she attended fourteen physical therapy sessions. On February 22, 2012, upon discharge, Ms. Steuerwald reported that the edema in her legs was much improved. However, she continued to experience episodes of near syncope (fainting), moderate shortness of breath on exertion, and edema fluctuating in her arms, trunk, and face, and to a much lesser extent in the legs. In February 2012, Ms. Steuerwald saw Dr. Adair and reported lightheadedness, shortness of breath, and edema in her arms and legs. (Filing No. 9-9 at

7.)  While the physical examination was mostly normal, Dr. Adair referred her to Dr. Kelly Paul ("Dr. Paul"), whom he considered a lymphedemiologist.

Ms. Steuerwald first saw Dr. Paul on February 24, 2012.  She complained of lymphedema with fatigue, shortness of breath, chest discomfort, lightheadedness, and fluctuating blood pressure.  (Filing No. 9-13 at 24-25.)  Dr. Paul observed that Ms. Steuerwald had palpable inguinal lymphadenopathy bilaterally (enlarged lymph nodes in the groin).  He also noted 1+ slightly pitting edema throughout both lower extremities bilaterally, including her trunk, but could not appreciate anything much more than maybe faint lymphedema in her upper extremities.

On May 4, 2012, Ms. Steuerwald met with Dr. Paul and complained of increasing difficulty with shortness of breath on exertion, chest pressure, swelling, and extreme fatigue.  Dr. Paul observed that she was somewhat edematous with abdominal wall and trunk lymphedema, as well as swollen lymph glands in her groin.  He diagnosed Ms. Steuerwald with at least grade one lymphedema throughout her lower extremities.

Ms. Steuerwald returned to Dr. Paul on July 11, 2012, with complaints of increasing difficulty with dyspnea on exertion, chest pressure, swelling over the entire body, and increasing fatigue.  Dr. Paul reported that the results of a recent stress test were unremarkable, and that a battery of laboratory tests were normal other than showing high cholesterol and mild hypothyroidism.  He further noted diffuse edema which was worse in the lower extremities, but also present in the upper extremities, trunk, and posterior thorax region.

On December 21, 2012, Ms. Steuerwald again saw Dr. Paul and complained of severe burning and peripheral neuropathy type-pain, which was somewhat relieved with Gabapentin.  (Filing No. 9-14 at 21-24.)  Dr. Paul noted that because of the pain from wearing shoes, Ms. Steuerwald was wearing flip-flops, despite the fact it was 27 degrees outside.  *Id*. at 23.  The

3

physical exam also indicated continued diffuse edema, particularly worse in the lower extremities, but also present in the upper extremities, trunk, and posterior thorax region. *Id*.

On January 23, 2013, Ms. Steuerwald saw neurologist, Dr. Chad H. Meshberger ("Dr. Meshberger"), and reported neuropathic pain in her lower extremities. Dr. Meshberger observed that she had 2+ (slight indentation) edema symmetric in both knees, as well as diminished pinprick sensation in both knees.

Ms. Steuerwald had another follow-up visit with Dr. Paul on March 22, 2013, and he reported that the recent lab tests showed that other causes of lymphedema were negative, and that the likely diagnosis was primary lymphedema. (Filing No. 9-14 at 11.) Ms. Steuerwald indicated that her lower extremity swelling was well controlled with the use of intermittent pneumatic compression devices, but her lymphedema symptoms rapidly accumulated with any prolonged sitting, standing, or walking. She also complained of persistent numbness and tingling in her feet and ankles, worsening pain, and reported leakage of lymph fluid around her toenails. Ms. Steuerwald reported that Gabapentin suppressed the pain, and that compound pain cream had some efficacy. Dr. Paul observed diffuse edema of the bilateral lower extremities with moderate pitting in her feet. He also noted that Ms. Steuerwald had full strength in all extremities, 1 to 2+ reflexes throughout, and impaired light touch sensation from mid-calf and below.

On April 1, 2013, Ms. Steuerwald saw Dr. Adair and complained of edema, cough, and sleep apnea. He noted that Ms. Steuerwald had 2+ pitting edema in her extremities. Later that month, she saw Dr. Karen Roos ("Dr. Roos"), a neurologist and colleague of Dr. Meshberger. Upon examination, Dr. Roos noted severe, symmetrical stocking-glove edema with 3+ pitting in Ms. Steuerwald's lower extremities. (Filing No. 9-14 at 8.) Dr. Roos' report discussed starting

steroid therapy. On August 1, 2013, Dr. Adair noted that no ankle edema was observed during his appointment with Ms. Steuerwald.

On September 4, 2013, Dr. Meshberger noted that Ms. Steuerwald was remarkably responsive to steroid therapy and had rapid resolution of the lower extremity swelling. (Filing No. 9-14 at 2-4.) Dr. Meshberger also noted that Ms. Steuerwald still had 1 to 2+ pitting edema to her mid shins bilaterally. He indicated that Ms. Steuerwald needed a fairly moderate level of steroid dosage to maintain control of the edema. The cause of her edema remained unclear.

**C.**     **Ms. Steuerwald's Hearing Testimony**

On November 13, 2013, at the hearing before the ALJ, Ms. Steuerwald testified that that she lived with her husband and her weight was 280 pounds. She did not have a cane or walker at the hearing, but she stated that she had been using a walker for around two years, but only when she went out for a long time. Ms. Steuerwald testified that she went to college for one year, but did not obtain a degree. She stated that she drove once a week to doctor appointments in Indianapolis.

Ms. Steuerwald testified that from 2002 to 2011 she was a truck driver and while driving, she would have to elevate her feet. She and her husband both drove trucks at the same locations and he would wind up loading her truck for her while she would lay in the back of the semi to rest her feet. She had not worked since her alleged onset date of December 13, 2011, and had not collected unemployment benefits or Workers' Compensation. Her last job was as a housekeeper in December 2011, which only lasted two days because of swelling. She indicated that she her doctor thought that if she got up and moved around it would help with the swelling, however, when she got up and moved around she got so swollen that her toenails came off.

Ms. Steuerwald could dress herself, cook some, do laundry, and wash dishes as long as she could stand. However, her husband would occasionally help her get out of the bathtub. Ms. Steuerwald could occasionally do mopping, dusting, and vacuuming, but she was not able keep the house like she used to. She reported that she went grocery shopping once a month and got out of the house every other month or so, for occasions such as birthdays or Christmas. She testified that she usually slept during the day.

At the hearing, the ALJ noted that there was nothing in the medical record to indicate that a doctor advised Ms. Steuerwald to elevate her feet. Ms. Steuerwald responded that she began elevating her feet after seeing her physical therapist, and that she knew to elevate her feet based on her own research. She said that she used a medical chair for the past three to four years to elevate her feet but acknowledged that the chair was not prescribed by any of her doctors.

Finally, Ms. Steuerwald testified that she needed to elevate her feet following activity, including sitting. She said that the length of time that she must elevate her feet would vary, but it could be "four or five hours", or "four or five weeks." For instance, Ms. Steuerwald explained that, because she had multiple doctor appointments in the past week, she was currently very swollen and may have to elevate her feet for the next two or three weeks.

**D.       Medical Expert Testimony**

On April 24, 2013, Dr. Paul completed a medical assessment of Ms. Steuerwald's ability to do work related activities. Dr. Paul opined that Ms. Steuerwald could occasionally lift and carry less than 10 pounds, stand and walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; needed to alternate between sitting, standing, and resting, with her feet propped up due to edema; should avoid repetitive pushing with her legs due to swelling; and could never perform any postural activities due to limited sensation and balance. (Filing No.

9-10 at 33-36.)  Dr. Paul further noted that Ms. Steuerwald could only occasionally reach, handle, finger, and feel due to swelling, and that she should avoid temperature extremes, vibration, humidity, wetness, and hazards because these could worsen neuropathic pain and swelling.  He also opined that Ms. Steuerwald's pain interfered with her attention and concentration; she would be absent more than four days per month; and that her medications' side effects included impaired attention and sedation.

On May 11, 2013, Ms. Steuerwald attended a consultative examination, performed by Dr. Mauro Agnelneri ("Dr. Agnelneri").  Dr. Agnelneri observed that Ms. Steuerwald's legs were markedly enlarged and edematous; her lower legs and skin was very sensitive to the touch; she used a walker for balance, but her gait was stable; she could not perform a full squat without difficulty; she could stand on one leg with some balance issues; and that she could heel-toe walk and appeared comfortable in the seated and supine positions.  Dr. Agnelneri opined that Ms. Steuerwald could occasionally lift up to 50 pounds and carry up to 10 pounds; sit one hour at a time and four hours total in an eight-hour workday; and stand or walk 10 minutes at a time for a total of one hour each in an eight-hour workday.  He further noted that when she was not sitting, standing, or walking during an eight-hour day, Ms. Steuerwald should have her "[f]eet up." Further, Dr. Agnelneri opined that Ms. Steuerwald had normal range of motion, grip strength, finger abduction, reflexes, and motor strength with no swelling in her hands.

Dr. Agnelneri indicated that Ms. Steuerwald could occasionally stoop, kneel, crouch, reach, and finger; frequently handle, feel, push, and pull; and never operate foot controls, balance, crawl, or climb stairs, ramps, ladders, or scaffolding.  He further believed that Ms. Steuerwald should avoid unprotected heights and could not perform activities like shopping or walk a block at a reasonable pace on rough or uneven surfaces.  Dr. Agnelneri stated that Ms. Steuerwald could

travel without a companion, use public transportation, climb a few steps with a handrail, prepare a simple meal, care for her personal hygiene, and sort, handle, and use paper files.

Doctor Lee Fischer ("Dr. Fischer") and Doctor Don Olive ("Dr. Olive") testified at the hearing before the ALJ as medical experts. Dr. Fischer is a board-certified physician who has practiced family medicine since 1973. (Filing No. 9-4 at 53.) He testified that Ms. Steuerwald's history of impairments included lymphedema, morbid obesity, hypertension, hypothyroidism, neuropathy of the lower extremities, and atypical sleep apnea. (Filing No. 9-2 at 66.)

Dr. Fischer opined that Ms. Steuerwald could lift and carry ten pounds occasionally and less than ten pounds frequently; sit for two hours at a time for a total of six hours in an eight-hour workday; stand or walk for thirty minutes at a time and in combination for a total of two hours in an eight-hour workday; and if seated, should be allowed to changed positions for five minutes every hour at her workstation. Regarding Ms. Steuerwald's restrictions, Dr. Fischer believed that she should never crouch, drive, crawl, use foot controls, kneel, squat, or climb ladders, ropes or scaffolding, and could occasionally stoop or bend. Dr. Fischer stated that Ms. Steuerwald had no fine or gross manipulative limitations, no reaching limitations, and no restrictions regarding humidity, vibration, or temperature. He also noted that Ms. Steuerwald's doctors were "not quite sure why she's had this condition for fifteen years", commenting that "they're talking about 15 years of some type of generalized edema without a specific diagnosis." (Filing No. 9-2 at 66-67.) While Dr. Fischer opined that it would be reasonable for a doctor to suggest elevation of the feet of a person with edema, he found no documentation in the medical record that showed it was mandatory.

Dr. Olive, a psychologist and neuropsychologist who is licensed but not board-certified, testified regarding Ms. Steuerwald's mental impairments.  (Filing No. 9-4 at 56.)  He testified that Ms. Steuerwald's mental impairments were not severe.  (Filing No. 9-2 at 69-70.)

**E.     The ALJ's Decision**

The ALJ first determined that Ms. Steuerwald met the insured status requirement through December 31, 2015.  He then began the five-step disability analysis.  At step one, the ALJ found that Ms. Steuerwald had not engaged in substantial gainful activity since December 13, 2011.  At step two, the ALJ found that Ms. Steuerwald had the following severe impairments: atypical sleep apnea, hypertension, lymphedema, hypothyroidism, neuropathy of the lower extremities, and obesity.  The ALJ found that Ms. Steuerwald's mental impairments of depression and anxiety to be non-severe because they did not cause more than minimal limitation in her ability to perform basic mental work activities.  At step three, the ALJ concluded that Ms. Steuerwald did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Ms. Steuerwald had the residual functional capacity ("RFC") to perform sedentary work as defined in 12 CFR 404.1567 (a), except that she could lift and carry ten pounds occasionally and less than ten pounds frequently; sit for two hours at a time and for a total of six hours in an eight-hour workday; stand and walk each for thirty minutes at a time and in combination for a total of two hours in an eight-hour workday; she could not crouch, drive, crawl, use foot controls, kneel, squat or climb ladders, ropes, scaffolds, or stairs; she could occasionally stoop and bend; she should avoid heights and hazards; and the work should allow her to change positions for five minutes every hour at her workstation.

At step four, the ALJ determined that Ms. Steuerwald was capable of performing past relevant work as a data examination clerk, since she performed this work within fifteen years of the date of adjudication.   In determining that Ms. Steuerwald's past relevant work was not precluded by her RFC, the ALJ relied on the testimony of the Vocational Expert.   Alternatively, at step five, the ALJ determined that other jobs exist in significant numbers within the national economy that Ms. Steuerwald could perform such as information clerk, general office clerk, and assembler.   Accordingly, the ALJ found that Ms. Steuerwald was not disabled.

## II.  <u>LEGAL STANDARD</u>

### A.    <u>Disability Determination</u>

Under the Social Security Act, a claimant is entitled to DIB if she establishes she has a disability.  42 U.S.C. §§ 423(a)(1)(E), 1382 (2012).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A) (2012).  To justify a finding of disability, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id*.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, if the claimant

10

does not have a "severe" impairment that meets the durational requirement, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings").  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1.  The listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a).  *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1.  For each listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that listing.  20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a listing, then the ALJ assesses the claimant's RFC for use at steps four and five.  20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv).  Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).  The claimant is not disabled if she can

perform any other work in the relevant economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).  The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process.  42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G) (2012).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**B.**    **Review of the Commissioner's Final Decision**

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner.  *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence.  42 U.S.C. § 405(g)(2012); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do."). While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## III. <u>DISCUSSION</u>

Ms. Steuerwald raises two arguments in her request for judicial review. First, she contends that the ALJ failed to appropriately weigh the medical opinions of her treating physicians. Second, she argues that the ALJ improperly considered her credibility.

**A.     <u>The ALJ adequately explained his reasons for discounting the medical opinions of the treating physicians and afforded proper weight to Dr. Olive.</u>**

Ms. Steuerwald argues that the ALJ failed to give controlling weight to the opinions of her treating physicians, Dr. Paul and Dr. Agnelneri. The ALJ minimally articulated and adequately supported his reasons for discounting the medical opinions of Dr. Paul and Dr. Agnelneri and for

giving greater weight to the opinions of Dr. Fischer and Dr. Olive. Accordingly, the Court is not persuaded by plaintiffs' argument.

A treating physician's opinion regarding the nature and severity of a medical condition is ordinarily entitled to controlling weight if the opinion is well supported by the medical findings and is consistent with substantial evidence in the record. *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). More weight is generally afforded a treating physician's opinion because he is more familiar with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(c)(2).

However, while the treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); 20 C.F.R. § 404.1527(d)(1). Thus, if a treating physician's medical opinion is internally inconsistent or inconsistent with other evidence in the record, an ALJ is entitled to give the opinion lesser weight. *Schmidt*, 496 F.3d at 842. Indeed, when evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's opinion becomes "just one more piece of evidence for the ALJ to weigh." *Hofslien*, 439 F.3d at 377.

An ALJ's decision to give lesser weight to a treating physician's opinion is afforded deference, so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2011); *Copeland v. Astrue*, 3:09-CV-431-JD, 776 F. Supp. 2d 828, 836 (N.D. Ind. Mar.1, 2011); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."). The Seventh Circuit has characterized this deferential standard as "lax." *Berger*, 516 F.3d at 545; *Brown v. Astrue*, No. 1:10-CV-1035-SEB, 2011 WL 2693522, *3 (S.D. Ind. July 8, 2011).

14

Nevertheless, once an ALJ decides to give lesser weight to a treating physician's opinion, the ALJ still must determine what weight the physician's opinion is due under the applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). Factors the ALJ should consider when determining the weight to give the treating physician's opinion include the length, nature, and extent of the treatment relationship, whether the physician supported his opinion with sufficient explanations, and whether the physician specializes in the medical conditions at issue. *See Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008); 20 C.F.R. 404.1527(c)(2).

### 1.   The ALJ minimally articulated and adequately supported his reasons for not giving Dr. Paul's medical opinions controlling weight.

Ms. Steuerwald argues that the ALJ erred in not giving controlling weight to the medical opinion of Dr. Paul.  Regarding the weight afforded to the medical opinion of Dr. Paul, the ALJ concluded as follows:

> This opinion is also given little weight as it is not consistent with the evidence as a whole.  For example, the claimant had no problems with fine or gross manipulations at the consultative exams.  Further, there is no indication that the claimant has any aversion to temperature extremes, humidity, or wetness.  As noted above, the claimant has no more than mild limitations in concentration, persistence, or pace.  There is also no evidence to support the contention that the claimant would be absent from work more than four days per month or could not sit, stand, and walk in combination for eight hours per day with appropriate breaks and the ability to shift positions.  Overall, the DDS physician's and Dr. Fischer's opinions are more consistent with the evidence as a whole.

([Filing No. 9-2 at 28](.))

Ms. Steuerwald first contends that the ALJ failed to address evidence that may have supported Dr. Paul's opinion.  In particular, Ms. Steuerwald argues that the ALJ failed to address facts that were included in Dr. Paul's basis for the manipulative limitations, such as Dr. Paul's

comment that "swelling affects the ability to do manipulation of objects [and] leads to fatigability of arm [with] repetitive movements."

In this regard, the ALJ was not required to discuss every piece of evidence in the record. *Carlson*, 999 F.2d at 181. Further, that the facts could suggest more than one disability conclusion does not demand reversal of the ALJ's opinion. Instead, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision. *Elder*, 529 F.3d at 413. What matters is that the ALJ considered the evidence and minimally articulated his reasons for accepting and rejecting the treating physician's opinion. The ALJ's decision to give lesser weight to a treating physician's opinion is afforded deference, so long as the ALJ minimally articulates his reasons for doing so. *Berger*, 516 F.3d at 545.

Here, the ALJ spent four pages discussing the evidence of record, paying particular attention to Ms. Steuerwald's edema. (*See* Filing No. 9-2 at 23-26.) Further, the ALJ minimally articulated why he rejected Dr. Paul's opinion regarding Ms. Steuerwald's manipulative limitations by noting that Ms. Steuerwald had no such limitations at the consultative exams. If a treating physician's medical opinion is internally inconsistent or inconsistent with other evidence in the record, an ALJ is entitled to give the opinion lesser weight. *Schmidt*, 496 F.3d at 842.

Ms. Steuerwald also argues that the ALJ made an "out-of-context and irrelevant statement" in rejecting Dr. Paul's opinion regarding her attention and concentration. Specifically, Ms. Steuerwald points to the ALJ's comment that "[a]s noted above, the claimant has no more than mild limitations in concentration, persistence, and pace." However, when reviewed in light of the opinion as a whole, the ALJ's comment is neither out-of-context nor irrelevant. Instead, it is offered to demonstrate that Dr. Paul's opinion is in conflict with other record evidence.

Specifically, it appears that the ALJ used the comment to reference his extensive discussion of the mental health evidence at step three, wherein the ALJ found only mild limitations in that area. While the ALJ did not restate all of his step three analysis when discussing Dr. Paul's opinion, the ALJ was not required to do so. Further, the evidence supports the ALJ's finding that Dr. Paul's opinion was not supported by the record as a whole. Indeed, an ALJ must give controlling weight to a treating physician's opinion only if it is both well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence of record. *Elder*, 529 F.3d at 415.

Ms. Steuerwald additionally contends that the ALJ erred in determining that "there is also no evidence to support the contention that the claimant would be absent from work more than four days per month or could not sit, stand, and walk in combination for eight hours per day . . ." (Filing No. 9-2 at 28.) Ms. Steuerwald claims that this is a "vague statement" by the ALJ and is not supported by any specific evidence. The ALJ, however, is not required to support his statement solely by discussing specific evidence. Instead, the ALJ found that there was no medical evidence to support Dr. Paul's opinion. *See* 20 C.F.R. § 404.1527(c) (listing supportability as a factor in weighing physician opinions).

Finally, Ms. Steuerwald asserts that the ALJ "neglected to have any discussion regarding the factors" set forth in 20 C.F.R. § 404.1527(c) in determining that Dr. Paul's opinion should not be afforded controlling weight. *See* 20 C.F.R. § 404.1527(c) (listing length of treatment history and frequency of examination, nature and extent of relationship, supportability, consistency, and specialization as specific factors in weighing a medical source opinion). This assertion is incorrect, as the ALJ thoroughly discussed the lack of supporting evidence and the inconsistency of the opinion as compared to the record evidence. Further, while the ALJ did not specifically discuss

*all* of the factors of 20 C.F.R. § 404.1527(c), he is not required to do so.  *See, e.g.*, *Henke v. Astrue*, 498 Fed. Appx. 636, 640 (7th Cir. 2012) (unpublished opinion) (affirming the denial of benefits where ALJ rejected a treating physician's report based solely on the lack of evidence supporting the treating physician's opinion and the opinion's inconstancy with the record); *Elder*, 529 F.3d at 415-16 (affirming denial of benefits where the ALJ only discussed the treating physician's specialization and the lack of medical supportability of the treating physician's opinion).

The ALJ discussed all of the relevant evidence on the record, and similarly discussed Dr. Paul's opinion with regard to Ms. Steuerwald's edema.  Further, the ALJ minimally articulated and adequately supported his reasons for not giving Dr. Paul's medical opinions controlling weight.  Therefore, the ALJ was justified in determining that Dr. Paul's medical opinion should not be given controlling weight.

## 2. __The ALJ minimally articulated and adequately supported his reasons for not giving Dr. Agnelneri's medical opinions controlling weight.__

Ms. Steuerwald also argues that the ALJ failed to give controlling weight to the opinion of Dr. Agnelneri.  Regarding the weight afforded to the medical opinion of Dr. Agnelneri, the ALJ concluded as follows:

> This opinion is also given little weight as it is not consistent with his own report or the evidence as a whole.  For example, Dr. Agnelneri's exam showed normal grip strength and finger abduction, but he opined the claimant could only occasionally reach and finger.  Dr. Agnelneri also opined [the claimant] should never climb stairs, ramps, ladders, or scaffolds but a few pages later indicates she could climb a few steps with a handrail, travel without a companion, and use public transportation.  Overall, the DDS physician's and Dr. Fischer's opinions are more consistent with the evidence as a whole.

(Filing No. 9-2 at 29.)

Ms. Steuerwald argues that Dr. Agnelneri's opinion is neither inconsistent with the record, nor internally inconsistent.  Specifically, Ms. Steuerwald points to the record which shows that

swelling in her upper extremities could reasonably cause her to only occasionally reach or finger. This argument appears to be an appeal for the Court to review the same facts as the ALJ but come to a different conclusion. The Court, however, does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute this Court's judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Instead, the only determination that the Court is at liberty to make is whether the ALJ minimally articulated and adequately supported his reasons for giving Dr. Agnelneri's opinion little weight.

Here, the ALJ was entitled to give Dr. Agnelneri's opinion little weight because the ALJ determined that Dr. Agnelneri's opinion was internally inconsistent and inconsistent with other evidence in the record. *See Schmidt*, 496 F.3d at 842. Further, the ALJ minimally articulated his reason for doing so by stating two examples of his perceived inconsistencies with Dr. Agnelneri's medical opinion. Specifically, the ALJ noted that Dr. Agnelneri's examination showed Ms. Steuerwald had normal grip strength and finger abduction, but then he later opined that she could only reach and finger. (Filing No. 9-2 at 29.) Further, the ALJ specifically noted that Dr. Agnelneri opined that Ms. Steuerwald could never climb stairs or ramps, but then later indicated that she could climb a few steps with a handrail, travel without a companion, and use public transportation. *Id*. Therefore, the ALJ was justified in giving Dr. Agnelneri's opinion little weight because he minimally articulated the inconsistencies the opinion.

### 3.   The ALJ's inaccurate statement concerning Dr. Olive's board certification was a harmless error.

Finally, Ms. Steuerwald argues that the ALJ erred in giving great weight to the testifying medical experts' opinions because the ALJ inaccurately stated that Dr. Olive was "board certified".

Regarding the weight afforded to the opinions of Dr. Fischer and Dr. Olive, the ALJ concluded as follows:

> Great weight is given to the opinions of Dr. Fischer and Dr. Olive, the medical experts who testified at the hearing.  Dr. Fischer and Dr. Olive are board certified in specialties that are particularly relevant here, had the opportunity to review the entire record, and are experienced in Social Security Disability evaluation as independent medical experts.  For these reasons, their opinions are entitled to great weight.

(Filing No. 9-2 at 29.) (Internal citations omitted.)

While the ALJ did incorrectly state that Dr. Olive was board certified, under these circumstances this was a harmless error.  *See Scott v. Astrue*, 730 F. Supp. 2d 918, 935 (C.D. Ill. 2010) ("[h]armless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits"); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision"). *See also Salt River Project Agric. Improvement and Power Dist. v. U.S.*, 762 F.2d 1053, 1060 n. 8 (D.C. Cir. 1985) ("[w]hen it is clear that based on the valid findings the agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming.").

While not board certified, Dr. Olive has been a licensed forensic psychologist and neuropsychologist since 1990.  (Filing No. 9-4 at 56.)  Although this is not the same as being board certified, the ALJ correctly noted that Dr. Olive's specialty was relevant, as Dr. Olive testified regarding Ms. Steuerwald's mental RFC, a decision that Ms. Steuerwald does not specifically challenge on appeal.  Further, the ALJ additionally, and correctly, noted that Dr. Olive had the opportunity to review the record and was experienced in DIB evaluation as an independent medical expert.  (Filing 9-2 at 29.)  Finally, and most important, Ms. Steuerwald was represented by counsel at the hearing before the ALJ and her counsel stipulated to Dr. Olive's credentials at the hearing. *Id.* at 65, 68.  While the ALJ did make an error as to Dr. Olive's board certification, he also

minimally articulated other reasons why he gave Dr. Olive's opinion great weight. The ALJ's error was harmless, as it did not affect his ultimate determination of whether Ms. Steuerwald was entitled to benefits.

In sum, the ALJ discussed all of the relevant evidence on the record, and similarly discussed both Dr. Paul and Dr. Agnelneri's opinions. The ALJ minimally articulated and adequately supported his reasons for not giving Dr. Paul and Dr. Agnelneri's medical opinions controlling weight. Further, the ALJ's error in regard to Dr. Olive's board certification was harmless. Therefore, the ALJ was justified in determining that Dr. Paul and Dr. Agnelneri's medical opinions should be accorded little weight.

**B.      The ALJ adequately considered Ms. Steuerwald's credibility and sufficiently articulated the credibility decision.**

Ms. Steuerwald next argues that the ALJ insufficiently explained his finding that her statements were only partially credible. Upon careful consideration, the Court disagrees and finds that the ALJ's credibility determination was well-supported and more than sufficiently articulated.

Because the ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal if it is supported by some record evidence and is not "patently wrong". *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995). *See also Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) ("[i]t is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong'"); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("[o]nly if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed.").

However, at a minimum, an ALJ must articulate specific reasons to support his credibility finding. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); SSR 96-7p. In this regard, while an ALJ is not required to provide a complete written evaluation of every piece of testimony

and evidence, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible.  *Id*.  Instead, the relevant regulations identify seven examples of the kinds of evidence the ALJ considers, in addition to objective medical evidence, when assessing the credibility of a claimant's statements, including,

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).  *See also* SSR 96-7p.

The ALJ gave multiple reasons for discounting some of Ms. Steuerwald's testimony, and extensively discussed her testimony and the other record evidence.  In particular, the ALJ stated, in relevant part,

> After consideration of the claimant's statements throughout the record, both documentary and oral, I find that the claimant is partially credible. Although she has described activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding her functioning to be severely limited.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Secondly, even if her daily activities are as limited as alleged, it is difficult to attribute that degree of limitation to her medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities are outweighed by the other factors discussed in this decision.

> While the claimant's medically determinable impairments could reasonably be expected to cause in general the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations are not supported by medically acceptable clinical and diagnostic techniques.  Neither are the symptoms and limitations described by the claimant supported by the records of the treating and examining physicians and mental health professionals.  Further, there is insufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to the alleged level of pain and limitations.

(Filing No. 9-2 at 27.)

In addition, the ALJ extensively discussed the relevant factors.  For instance, with regards to Ms. Steuerwald's description of the location, duration, frequency, and intensity of her symptoms, the ALJ noted that she had normal examination results and that "her physical exams have generally shown normal strength, range of motion, and gait."  *Id.* at 26.  The ALJ further discussed Ms. Steuerwald's reflexes, strength, range of motion, motor coordination, and grip strength from her consultative exams.  *Id.* at 27.  Additionally, he noted that Ms. Steuerwald "alleges depression and anxiety, yet there is no evidence of any counseling or therapy designed to treat psychiatric or mental symptoms."  *Id.*

In regard to precipitating or aggravating factors, the ALJ noted Ms. Steuerwald's alleged difficulty with prolonged sitting, standing, and walking due to pain and swelling and considered these facts in assessing her RFC.  Further, the ALJ noted that "her hypertension is fairly well controlled with medication" and "her neuropathy is somewhat relieved with gabapentin."  *Id.*  He also noted that "[m]ore recently, she has been remarkably responsive to steroid therapy."  *Id.*  Discussing treatment other than medication, the ALJ noted that "physical therapy improved the edema in her legs" and that "[s]he has also said her lower extremity swelling is well controlled with use of intermittent pneumatic devices."  *Id.*

Despite this extensive credibility discussion, Ms. Steuerwald maintains that the ALJ relied heavily on boilerplate language to support his finding.  Specifically, Ms. Steuerwald points to the ALJ's reasoning that "limited daily activities cannot be objectively verified with any reasonable degree of certainty," and that even if these activities were as limited as alleged, "it is difficult to attribute that degree of limitation to her medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this section."  (Filing No. 9-2 at 27.)  Ms.

Steuerwald cites to *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014), where the court rejected an ALJ's similar rationale that "alleged limited daily activities cannot be objectively verified with any reasonable degree of certainty."   While the ALJ's use of the similar language in this case would be insufficient in determining Ms. Steuerwald's credibility *by itself*, here, the ALJ provided ample *additional* reasoning to support his credibility determination.   *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of "boilerplate" language can be harmless.").   Specifically, the ALJ additionally opined that "even if her daily activities are as limited as alleged, it is difficult to attribute that degree of limitation to her medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this section."   (Filing No. 9-2 at 27.)   Further, the ALJ noted that he had addressed four other credibility factors at length and concluded "[o]verall, the claimant's reported limited daily activities are outweighed by the other factors discussed in this decision."   *Id*.

Finally, Ms. Steuerwald argues that the ALJ "cherry-picked" facts to support his credibility finding, and that these facts were mischaracterized.   However, if an ALJ is to articulate why he is making a determination, he must inevitably identify the facts he chose to rely on.   Here, the ALJ identified specific evidence from the record when discussing the factors of 20 C.F.R. § 416.929(c)(3).   This Court finds that ALJ did not mischaracterize any of the evidence that he relied upon.   Since this Court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute this Court's judgment for that of the Commissioner, it must defer to the ALJ's determination unless it lacks any explanation or support.   *See Overman* 546 F.3d at 462; *Lopez ex rel. Lopez* 336 F.3d at 539; *See also Elder* 529 F.3d at 413-14.

Accordingly, because the ALJ properly assessed the record evidence and adequately explained his reasons for discounting Ms. Steuerwald's testimony, the Court does not find that the ALJ's credibility determination was "patently wrong".

## IV.  CONCLUSION

For the aforementioned reasons, this Court **AFFIRMS** the Commissioner's final decision.

**SO ORDERED.**

Date: 11/23/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Justin J. Kosiba
HENSLEY LEGAL GROUP, P.C.
jkosiba@hensleylegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov